BLONDET *v.* AMORÓS HERMANOS ET AL.

APPEAL from the District Court of Guayama.

No. 92.—Decided June 13, 1906.

APPEAL—EVIDENCE—BILL OF EXCEPTIONS—STATEMENT OF FACTS.—In order that the Supreme Court may consider on appeal the evidence taken at the trial, it is necessary that the same be set forth in a bill of exceptions or statement of facts, and the notes of the stenographer cannot be used as a substitute for either of these documents.

The facts are stated in the opinion.

*Mr. Manuel F. Rossy* for appellant.

*Mr. De la Torre* for respondent.

MR. CHIEF JUSTICE QUIÑONES delivered the opinion of the court.

This is an appeal taken by Carlos H. Blondet in the above-mentioned case, from a judgment rendered by the District Court of Guayama, on June 30, 1905, dismissing the complaint and taxing the costs against the plaintiff.

The complaint was filed in said district court on May 15, 1904, and is based upon the following facts:

"That the plaintiff is the owner of a plantation called 'Melania,' situated in the municipal district of Guayama, having an area of 800 *cuerdas* and the boundaries described in the complaint.

"That this farm for many years belonged to Feliz Gaudinau and upon his death reverted to his brothers and sisters of the same surname, among them Emma, and upon her death it became the property of her son, Carlos H. Blondet, the plaintiff, his father, Doctor Juan Hondré Blondet having had the administration of said estate until the plaintiff could take possession thereof, which possession was delivered to him in February, 1898.

"That in March, 1851, the Government of this Island granted Feliz Gaudinau the use of the waters of the Guamaní River for the irrigation of the lands of the 'Melania' plantation, using for the purpose of conducting the water from the river to the plantation a canal 8½ *cuerdas* long.

"That on the other side of the river opposite the 'Melania,' plantation is situated a plantation called 'Reunión,' which formerly belonged to Gual Hermanos, and is now the property of Amorós Hermanos; that in the year 1875 Gual Hermanos obtained from the Government of this Island authority to make use of the filtration waters and the torrential and hibernal waters of the Guamaní River for the irrigation of the plantation belonging to them, under certain conditions, one of which was the reservation of the rights of private property, and the concession being understood to be without prejudice to third persons; and in 1890 they obtained additional authority to take 92 liters of water per second from said river for the same purpose.

"That subsequently Amorós Hermanos, having acquired the 'Reunión' plantation at public sale, they obtained authority from the Government in 1895 to change the intake of the waters of the Guamaní River granted to Gual Hermanos in 1890, the grant being still considered to be without prejudice to third persons and with due respect to the rights of private property, and that from this date, as the water of the 'Melania' concession had not been used for some time on account of the plantation having been converted into pasture land, Amorós

Hermanos, taking advantage of this circumstance, took possession of the irrigating canal of the 'Melania' estate, which canal they have arranged and prolonged as they have seen fit, using the water of the river for the irrigation of 'Reunión' estate exclusively, and depriving the 'Melania' estate of the use of the waters granted it by the Government, by which the interests of the plaintiff are considerably prejudiced.''

Upon these grounds and upon the additional legal grounds which he deemed applicable, he closed his complaint praying the court to hold:

''1. That the concession enjoyed since 1851 by the 'Melania' estate for the use of the water of the Guamaní River, should not and can not be affected by the grant made to Amorós Hermanos for the use of the water from the same river on their 'Reunión' estate.

''2. That, therefore, Amorós Hermanos cannot make use of the dam, intake and canals for conducting the water of the 'Melania' concession in order to make use of such waters in the 'Reunión' concession, and are obliged to construct the works required by their concession if they should be within the prescribed time therefor.

''3. That in any event Amorós Hermanos should indemnify Carlos H. Blondet for the damage caused him by the use of the waters, by preventing the 'Melania' estate from using them, by utilizing the canal, the dam and the intake of the 'Melania' estate, and by continuing the canal of the latter to conduct the water to the 'Reunión' estate, such damage to be appraised by experts; and that Messrs. Amorós Hermanos be adjudged to pay them together with the costs of the proceedings.''

The defendants, Amorós Hermanos, and Mateo and Rafael Amorós, and Bárbara Esteva, whom the complaint was made to include as defendants because of the fact that they composed the Estate of Sebastián Amorós, one of the coowners of the ''Reunion'' plantation, made answer to the complaint, opposing it and alleging a number of facts which are in substance as follows:

''That there was no concession whatever of the water of the Guamaní River in favor of the 'Melania' estate, this assertion being

corroborated by the fact that its coowner and manager, Doctor Blondet, requested permission in the year 1872, to make studies for the purpose of securing it, which studies he did not make, and neither in the general statement of concessions for irrigation purposes in the Island, nor in the special statement of estates securing irrigation from the Guamaní River, nor in the records relating thereto, does the property of the plaintiff appear either as a plantation or a farm.

"That when the grant of waters was made to Messrs. Gual there was no dam nor works, apart from the fact that the water gauge, which has been required since the year 1875, never existed.

"That the 'Melania' estate only had a small planting of cane, and this thirty or forty years ago, in which the water referred to was never utilized either legally or surreptitiously.

"That the two grants of water from said river in favor of the 'Reunión' estate were executed and carried out with all the publicity prescribed, without opposition on the part of the owners of the 'Melania' estate, at the cost of the grantees, the works having been officially approved and all requisite conditions fulfilled.

"That in the last of these grants the amount of water to be used was fixed at 92 liters per second, which were used and measured by a water gauge, for which they paid, by the dam which they constructed at their expense and the canal which they also constructed at their expense with the knowledge and acquiescence of the owners of the 'Melania' estate, who have never been absent.

"That the firm of Amorós Hermanos acquired the 'Reunión' estate by public deed executed in this city on July 3, 1891, in which Gual Hermanos sold them the estate with (among other things) its irrigation canals, pumps, piping for irrigation, and the irrigation concession existing in favor of said estate; and the right of said firm was at once recorded in the proper registry of property.

"And that Amorós Hermanos, making use of another concession which was published, consented to and approved, laid a pipe within the river, and on the 'Melania' plantation they did nothing more than build a portion of a dirt ditch of masonry through which the water ran, and this benefited the 'Melania' plantation by reason of other improvements made thereon, and that it even enjoys the use of a part of the waters."

For which reasons they concluded with a prayer that the court dismiss the complaint with the costs against the plaintiff.

The default of Pedro Amorós, another heir of Sebastián of the same surname, having been entered, because of his failure to appear and answer the complaint, the plaintiff, Carlos H. Blondet, under authority granted by the court, amended the complaint by praying that it be held:

"That the concession which the 'Melania' plantation has enjoyed since 1851, to use and enjoy the waters of the Guamaní River, cannot and must not be interrupted by the concession granted to Amorós Hermanos and Mateo, Rafael and Pedro Amorós and Bárbara Esteva, whereby the latter, as the owners of the 'Reunión' plantation, use the waters of the same river to irrigate the said plantation; that therefore the said defendants, under the concession to the 'Reunión' plantation, cannot use the dam, intake and canals used by the 'Melania' plantation under its concession, and that they cannot use the waters of the Guamaní River which the 'Melania' plantation used and may use under its concession, and that the said defendants are bound to construct the works required by their concession to use the surplus waters, if they are in time to do so, and in accordance with the provisions of the Law of Waters; that in any event the defendants should indemnify the plaintiff for the damage suffered by reason of the use of the waters by the said defendants, preventing the 'Melania' plantation from using or being able to use the same, using the canal belonging to the 'Melania' plantation and continuing the same to take the waters of 'Reunión' plantation, which damages will be shown and determined in the proper trial herein; and that the defendants pay all the costs."

The evidence proposed by the parties was taken at the trial, the same consisting of public and private documents, the testimony of witnesses and the opinions of experts; and the allegations of counsel for the parties having been heard, the District Court of Guayama rendered the following judgment, to wit:

"No. 51.—*Carlos H. Blondet v. Amorós Hermanos.*—Use of intake for irrigation waters, and other matters. On the 16th of July, 1905, this case was called for trial, and the plaintiff and the defendants, Amorós Hermanos, Mateo and Rafael Amorós and Bárbara Esteva, represented by their attorneys, duly appeared. The parties having

announced that they were prepared to go to trial, and the other defendant, Pedro Amorós, not having appeared, and it being known to the court that the said defendant had been duly summoned, he was declared in default. Counsel for the plaintiff filed a motion in court asking leave to file several amendments to the complaint, which motion was sustained by the court and the request granted. The court, having heard the complaint and the answer thereto, the plaintiff introduced documentary evidence which was accepted by the defendants; and the plaintiff also proposed the testimony of experts, testimony of witnesses, and an ocular inspection by the court of the property involved in this litigation. The examination of the witnesses for the plaintiff was immediately proceeded to, and the witnesses Fabriciano Cuevas Sotillo, Fernando Lugo Viña, Sergio de la Mata, Hipólito Carreras, Enrique Dalmau, Antonio Vázquez, Juan Pica, Agustín Reyes, Juan Franco, Germán Felipe Germán, Julio Brenes, and José Vives, testified under oath. The defendants offered as evidence the testimony of witnesses, and the witnesses Pedro Lázaro Bank, Ignacio Gual, Juan Ledée, Daniel Cintrón, Juan de la Mata, Rafael Colón, Felipe Tirado, Miguel Sabater, Francisco Amorós, Nicolás Lorenzo, and Pedro Clausell, were examined under oath. The said defendants also introduced in evidence several documents which were accepted by the plaintiff. The court ordered that the documentary evidence of both parties be attached to the record; and in view of the fact that it was necessary to go to the country to make the ocular inspection requested by the palintiff, the hearing was continued, to be resumed again, to hear the arguments of counsel on the 17th of the present month. On the 17th of June, that being the date set upon which the hearing in this case should be resumed, the plaintiff and the defendants appeared, represented by their counsel. The plaintiff moved the court for permission to introduce two more witnesses to testify in regard to matters which he desired should appear on the record in this litigation. The court granted this petition of the plaintiff, and thereupon the witnesses Fernando Lugo Vina and Edgardo Vázquez testified under oath; and after hearing the arguments of counsel the court reserved judgment. On this the 30th day of June, 1905, the court decides and is of opinion that the law and the facts are in favor of the defendants, and therefore directs that the plaintiff recover nothing from the defendever under this complaint, with the costs of the suit against the plainants, and that said defendants go forth without any liability whatsotiff, which are assessed at $69.31, and that execution issue against his property for the satisfaction of this judgment. Done, pronounced and published in open court this 13th day of June, 1905.—Charles E.

Foote, judge of the district court. Attest: Francisco Morales, secretary of said court.

"Entered this 13th day of June, 1905.—Morales, secretary."

From this judgment counsel for the plaintiff, Carlos H. Blondet, took an appeal, and the transcript of the record having been sent up to this Supreme Court, inasmuch as the appellant asserted that several matters which should appear in the record did not appear therein and among them the additional testimony of witnesses which he proposed and which was admitted, being the testimony of the witnesses Francisco Lugo Vina and Edgardo Vázquez, the evidence of the ocular inspection which he proposed and which was made, and the two irrigation plants of the plantations "Melania" and "Reunión," which were introduced and admitted in evidence at the trial, he prayed for and obtained an order from this court directing the secretary of the District Court of Guayama to send up the said papers; and upon receipt thereof, with the exception of the evidence of the ocular inspection which the secretary advised, did not appear on record, and the petition of the appellant that the judge of the district court be requested to send up his written opinion upon the result of the ocular inspection made having been denied, the record was delivered to the appellant in order that he might prepare his brief, as was done; and a day was set for the hearing, which was had with the attendance of counsel for the parties.

In his brief counsel for the appellant asks that the judgment appealed from be vacated and that the District Court of Guayama be directed to hold a new trial in order that upon again making the ocular inspection prayed for and agreed upon and the result of such inspection being made to appear in the record, this court may duly examine and consider the same; counsel alleges that he could not move for a new trial before the district court, because he supposed that the result of this evidence appeared in the record, and that he did not discover that it did not so appear until later, when the court below had lost its jurisdiction to grant a new trial by

reason of the appeal taken from the judgment rendered therein; and counsel further prayed that in case the court should not grant a new trial, that the judgment be reversed and that the amended complaint be sustained, with the costs against the defendants.

In regard to the first point, the undersigned judge is of the opinion that the grounds alleged for the holding of a new trial are not sufficient, because the plaintiff had more than sufficient time to call the attention of the court to the fact that the result of the evidence taken did not appear in the record, and his petition in this respect must be denied; and in regard to the second point, inasmuch as there is no way to determine whether the trial court erred in making its findings upon the evidence, because the evidence has not been presented in the manner required by the provisions of section 214 of the Code of Civil Procedure—that is to say, by means of a bill of exceptions or statement of facts, approved by the judge, with the intervention of the opposing party (but by means of a bill of exceptions or statement of facts approved by the judge with the intervention of the opposing party, *sic*)—but by means of a certificate of the stenographer, which this court has already held in numerous decisions, is not the proper manner in which to present before it findings upon the evidence taken in the trial court, it is clear that this court has no proper means of considering it in order to decide whether the said findings of the trial court have been properly or improperly made.

Therefore, the appellant, not having proved error in the judgment appealed from, the same must be considered to be just and must be affirmed, with the costs of this appeal against the appellant.

*Affirmed.*

Justices Hernández, Figueras, MacLeary and Wolf concurred.